FILED

2009 Jun-01  PM 02:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| JENNIE R. STEWART, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | **Case.No.: 2:08-CV-0703-JHH** |
| | } | |
| MICHAEL J. ASTRUE, | } | |
| Commissioner of Social Security, | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Plaintiff, Jennie R. Stewart, brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

## I.      Proceedings Below

Plaintiff filed her application for SSI protectively on January 20, 2004, alleging a disability onset date of October 15, 2003, (R. 83-86, 291). Plaintiff's application was denied initially on April 5, 2004, (R. 24-29), and on April 29, 2004, Plaintiff timely filed a request for a hearing, (R. 30). Plaintiff's request was granted, (R. 31), and a hearing was held before an Administrative Law Judge ("ALJ") on July 6, 2006, in Jasper, Alabama, (R. 265-305). Plaintiff and Vocational Expert ("VE") James Hare provided testimony at the hearing. (R. 269-305).

In the October 31, 2006 decision[1], the ALJ determined that Plaintiff was not eligible for SSI because she was not under a "disability," as defined by the Act, at any time before the date of decision.  (R. 14-23).  Thereafter, on December 3, 2006, Plaintiff requested review of the ALJ decision by the Appeals Council.  (R. 8).  After the Appeals Council denied Plaintiff's request for review on February 22, 2008, (R. 3-5), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

At the time of the hearing, Plaintiff was thirty-one years old, a "younger" individual pursuant to 20 C.F.R. § 416.963(c), with a tenth grade, limited education. (R. 271).  Plaintiff has past relevant work experience as a caregiver (semi-skilled, medium exertional level), a kitchen helper (unskilled, medium exertional level), a cleaner/janitor (unskilled, medium exertional level), a rug roller (unskilled, medium exertional level), a stocker (semi-skilled, heavy exertional level), a farm laborer (unskilled, heavy exertional level), and a deli worker/cook (skilled, medium exertional level).  (R. 22, 299).   Plaintiff claims that since her alleged onset date of October 15, 2003, she has been unable to work due to degenerative joint disease of the knees, gastroesophageal reflux disease ("GERD"), polycystic ovarian syndrome ("PCOS"), depression, and morbid obesity. (R. 23).

At the hearing, Plaintiff explained that she cannot work because she is unable to lift patients, is "not able to stand on [her] feet," and is in constant pain.  (R. 274).  Plaintiff ranked her pain as a "eight" or "nine" on a scale of one to ten and described it as follows: "I sit, I hurt.  I stand, I hurt. I lay down, I hurt.  There is no relief."   (R. 274).  Plaintiff reported that she experiences pain "[e]very day, all day long" in her back, knees, stomach, and chest.  (R. 274).  Plaintiff does not,

---

[1] Although the decision itself was not dated, the Notice of Appeals Council Action indicates that the ALJ decision was issued on October 31, 2006.  (R. 3).

however, take any pain medication because "[t]hey haven't prescribed me any and I haven't asked for any." (R. 275). Plaintiff takes a muscle relaxer called cyclobenzaprine to help her sleep, (R. 277), and she uses an inhaler "[a]bout every other day" when she "get[s] real hot or . . . out of breath." (R. 288).

Plaintiff spends her time watching television "shift[ing] trying to make the pain stop." (R. 283). Plaintiff sleeps "[v]ery rarely" because of pain, (R. 285), and then only with "at least two pillows up under [her], because [she] can't lay flat on [her] back at all," (R. 283). Plaintiff's husband performs household chores and cooking for her, and he typically brings her items that she needs during the day. (R. 283).

Plaintiff explained that her doctors have advised her to exercise as a means of losing weight. (R. 283-85). Plaintiff indicated that "[b]efore the GERD ha[d] popped up, [she] was trying to walk around the block." (R. 283). At the time of the hearing, however, she estimated that she feels like walking only one day out of every week. (R. 285). Plaintiff smokes "[a]bout a pack [of cigarettes] every two days" but is "trying to quit." (R. 286).

## II.    ALJ Decision

Determination of disability under the Social Security Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. The claimant's residual functional capacity consists

of what the claimant can do despite her impairment.  Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix.  If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).  Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability on October 15, 2003. (R. 15, 23 at Finding No. 1).  He also found that, during the relevant time period, Plaintiff had the following medically determinable impairments, which he deemed to be "severe": GERD, PCOS, depression, and morbid obesity.  (R. 15-19, 23 at Finding No. 2).  Nevertheless, he determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1.  (R. 19-20, 23 at Finding No. 3).  According to the ALJ, Plaintiff's subjective complaints concerning her alleged impairments and their impact on her ability

4

to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record.  (R. 20-21, 23 at Finding No. 5).

Thus, the ALJ found that Plaintiff has retained the physical residual functional capacity ("RFC") to perform sedentary work, *i.e.,* work which is generally performed while sitting and does not require lifting in excess of ten pounds. (R. 20-21, 23 at Finding No. 4).  The ALJ also found that Plaintiff's mental RFC consists of the ability to understand, remember, and carry out simple instructions as well as the ability to respond appropriately to supervision, co-workers, and normal work pressures.   (R. 20-21, 23 at Finding No. 4).

The ALJ sought testimony from VE James Hare at the administrative hearing, and he posed several hypothetical questions to Hare regarding different scenarios of functional capacity.  (R. 300-05).  With Hare's help, the ALJ determined that Plaintiff is unable to perform any of her past relevant work, (R. 22, 23 at Finding No. 6, 299-300), but he concluded that Plaintiff could perform other unskilled jobs at the sedentary exertional level which exist in significant numbers in the national economy, including occupations such as surveillance system monitor and sorter, (R. 22, 23 at Finding No. 10, 300-02). Accordingly, the ALJ found that Plaintiff was not under a "disability," as defined by the Act, at any time through the date of decision.  (R. 23 at "Decision").

### III.    Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration.  (Doc. # 8, at 8).  Plaintiff's arguments to this court center on one principal contention:  she believes that the ALJ's decision is not supported by substantial

evidence and improper legal standards were applied because the ALJ improperly discredited her subjective complaints under the Eleventh Circuit "pain standard."  (Doc. # 8, at 5-8).

## IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision,  *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.    Discussion

Against that backdrop of applicable standards, the court rejects Plaintiff's request for remand and/or reversal.  The sole argument advanced by Plaintiff to this court is that the ALJ erroneously discounted her subjective complaints of pain, which include complaints of knee, back, and leg pain, pain from PCOS, and chest pain due to GERD.  (Doc. # 8, at 7).   More specifically, Plaintiff relies on Social Security Ruling 02-1p, 67 Fed. Reg. 57859 (2002) (hereinafter, "Ruling 02-1p") for her contention that the ALJ failed to adequately consider Plaintiff's obesity when he evaluated her complaints of pain.  (Doc. # 8, at 7).   Ruling 02-1p recognizes that obesity - and particularly Level III or "extreme" obesity like Plaintiff's[2] - increases an individual's chances of developing impairments and *may* exacerbate the effect of other impairments such that those impairments are more limiting than might be expected absent obesity (*i.e.*, an obese individual with arthritis affecting a weight-bearing joint may experience more pain and limitation that might be expected from the arthritis alone).  (R. 58-67).  Based upon this Ruling, Plaintiff contends that the ALJ should have credited her complaints of disabling pain because her extreme obesity renders her other impairments more limiting than they would be in a non-obese person.

As outlined below, the court has carefully reviewed the ALJ's decision and the record in this case.  Despite Plaintiff's contentions, the court finds no error in either the ALJ's application of Ruling 02-1p or his decision to discount Plaintiff's subjective complaints in accordance with the

---

[2] The Ruling defines three levels of obesity with Level III being the most severe or "extreme" and representing the greatest risk of developing obesity-related impairments. (R. 58-59).  Plaintiff's body mass index of 54, (R. 179), categorizes her in Level III, which includes individuals with body mass indexes greater than or equal to 40.  (R. 59).

Eleventh Circuit "pain standard."  First, however, the court will outline the standards governing consideration of Plaintiff's pain complaints.

### A.    Legal Standards Governing Application of the Pain Standard

It is axiomatic that the Act and its related regulations provide that a claimant's statements about pain or other symptoms *will not alone* establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929.  Rather, medical signs and laboratory findings must be present to show a medical impairment that could reasonably be expected to produce the symptoms alleged.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

When, as here, a claimant alleges disability through subjective complaints of pain or other symptoms, the Eleventh Circuit's "pain standard" for evaluating these symptoms requires: (1) evidence of an underlying medical condition, and *either* (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, *or* (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the alleged pain. *See* 20 C.F.R. § 404.1529; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Holt*, 921 F.2d at 1223; *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).  If the ALJ fails to credit a claimant's pain testimony, he must articulate reasons for that decision. 42 U.S.C. § 423(d)(5)(A).

After the application of the three-pronged pain standard, Eleventh Circuit jurisprudence requires a secondary inquiry, which evaluates the severity, intensity, and persistence of the pain and the symptoms a claimant actually possesses.  Indeed, there is a difference between meeting the judicially created pain standard and having disabling pain; meeting the pain standard is merely a threshold test to determine whether a claimant's subjective testimony should even be considered at all to determine the severity of that pain.  *See* 20 C.F.R. § 416.929(b) (2006); *Marbury v. Sullivan*,

8

957 F.2d 837, 839 (11th Cir. 1992) ("The Secretary must consider a claimant's subjective testimony of pain if [the pain standard is met]."). After considering a claimant's complaints of pain, an ALJ may then "reject them as not creditable." *Marbury*, 957 F.2d at 839. Although a reversal is warranted if the ALJ's decision contains no indication that the three-part pain standard was properly applied, *Holt*, 921 F.2d at 1223, the Eleventh Circuit has held that an ALJ's reference to 20 C.F.R. § 404.1529, along with a discussion of the relevant evidence, demonstrates the ALJ properly applied the pain standard, *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

**B.     The ALJ's Consideration of Plaintiff's Complaints of Pain**

In this case, the ALJ's analysis comports with the requirements of the pain standard for evaluating Plaintiff's subjective complaints, indicating that proper legal standards were applied in his analysis and that he considered Plaintiff's symptoms and subjective complaints in light of the steps outlined above. (R. 20-21). With respect to the first prong of the initial pain inquiry required by the Eleventh Circuit, the ALJ found sufficient evidence of underlying medical conditions related to the knee, back, leg, pelvic, and chest pain of which Plaintiff complains. *See* 20 C.F.R. § 404.1529. Specifically, the ALJ found evidence supporting diagnoses of GERD, PCOS, and morbid obesity, which he deemed to be severe. (R. 19). The ALJ also noted Plaintiff's complaints of a pinched nerve in her neck and back and bilateral knee pain, which he found were not severe. (R. 19).

Nevertheless, despite the existence of those underlying conditions related to Plaintiff's alleged pain, the ALJ rejected her claim that her knee, back, leg, stomach, and chest pain is so severe that she suffers from constant pain at the level of "eight or nine out of ten," twenty-four hours a day, seven days a week. (R. 19). As outlined below, the ALJ's decision to reject that testimony is based upon *both* the lack of objective medical evidence to confirm pain of that intensity and persistence,

9

and his determination that Plaintiff's conditions are not so severe that one could reasonably assume, even without objective evidence, that her conditions could give rise to pain of that magnitude. *See* 20 C.F.R. § 404.1529.

The ALJ reached his conclusions after a thorough review of the opinions of Plaintiff's treating and examining sources, (R. 16-21), which support his ultimate determination. *See* C.F.R. § 404.1529(c)(2). As to Plaintiff's alleged back and knee pain, the medical record - which spans over six years of medical treatment - is utterly devoid of any evidence that she sought treatment for those conditions. (R. 21). Indeed, Plaintiff's knee pain garners barely a mention in her medical records. In January 2006, during a musculoskeletal examination performed at the University of Alabama at Birmingham ("UAB") Clinic, Plaintiff reported only "some knee pain at the end of the day." (R. 19, 21, 248). Knee pain was never mentioned again during the next six months that she was seen by doctors at the UAB Clinic (R. 235, 237, 237, 240, 242, 244, 248, 252), and there is no evidence that she actually sought treatment for that condition.[3] Although Plaintiff did complain of back pain to consultative examiner Dr. C.B. Thuss, Jr., his ultimate diagnosis was lumbar radiculopathy of unknown etiology, (R. 181), apparently because he found no evidence of a cause for back pain during his examination of Plaintiff, (R. 21).[4]

---

[3] The examination conducted by consultative examiner Dr. C.B. Thuss, Jr. also undermines Plaintiff's complaints of severe knee pain. X-rays revealed only mild-to-minimal osteodegenerative changes in Plaintiff's right knee, and upon examination by Dr. Thuss, Plaintiff demonstrated full range of motion and strength of her lower extremities bilaterally without neurovascular deficits, cyanosis, varicosities, deformity, or edema. (R. 181, 183).

[4] Dr. Thuss observed that Plaintiff's back and neck exhibited no spasm or deformity and operated with normal ranges of motion. (R. 180, 182).

Plaintiff's complaints of disabling respiratory pain, including chest pain, (R. 275), and shortness of breath when walking or sitting, (R. 288), also lack support in the medical evidence.  The only diagnosed medical condition related to Plaintiff's chest pain is her GERD,[5] and records from May 2006 indicate that Plaintiff's GERD pain improved with the medication Prevcid. (R. 236, 242). During that examination, Plaintiff's doctor noted no shortness of breath or chest pain with exertion, and Plaintiff reported that she was able to walk one mile "without issues." (R. 235).   Although Plaintiff claims that she requires the use of an inhaler due to chronic bronchitis, the medical record contains no diagnosis of bronchitis after October 2003, and all pulmonary and respiratory examinations since that time have been within normal limits and have shown no evidence of wheezing, rales, rhonchi, or labored breathing.  (R. 21, 180).[6]

Plaintiff's final pain complaint relates to stomach/pelvic pain, which may be attributed to her PCOS and/or an incisional hernia connected with Plaintiff's 1999 gallbladder removal.  (R. 279-81). There is no indication from the record that Plaintiff's PCOS pain is disabling alone, or in combination with her other ailments –  Plaintiff explains that she only experiences PCOS-related

_____

[5] Although doctors investigated other potential causes for chest pain, none was found. Examinations revealed Plaintiff to have a clear chest, while her heart had a regular rate and rhythm. (R. 180, 209, 214, 235, 236, 242, 246, 249, 250). An EKG and chest x-ray of October 2005 were normal. (R. 214). The UAB Clinic noted in May 2006, that despite complaints of "chronic epigastric atypical chest pain", (R. 235), Plaintiff's "pre-risk probability [for heart problems] is really quite low given her HDL and her other family history and given her age," (R. 236).  Plaintiff's diagnosis of GERD, however, is documented by an EGD exhibiting abnormal findings with Plaintiff's esophageal sphincter. (R. 242).

[6] As the ALJ noted in his opinion, Plaintiff also smokes a package of cigarettes every two days and continued to smoke even after she received a diagnosis of tobacco abuse and was advised to quit. (R. 17, 209, 249, 286). *See Holley v. Chater*, 931 F. Supp. 840, 847-48 (S.D. Fla. 1996) (holding that "the continued use of cigarettes by plaintiff suggests that his pulmonary condition is not as severe as he alleges and further supports the ALJ's decision to accord [plaintiff's] subjective complaints diminished weight.").

abdominal cramping when she has "a monthly cycle once a year." (R. 281). As to the hernia, Plaintiff complains of pain upon bending and stooping, and she explains that she cannot twist because "it [] knots up and I have really bad muscle spasms run through it." (R. 281). Nevertheless, as the ALJ noted, Plaintiff has not sought treatment for that condition since 2003. (R. 19, 165-77). Moreover, the ALJ's RFC assessment that Plaintiff can perform work only at the lowest exertional level of sedentary certainly takes into account Plaintiff's complaints of pain from the hernia upon exertion. *See* 20 C.F.R. § 416.967(a) ("Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."). Importantly, nothing in the record indicates that Plaintiff's hernial pain is so severe that it prevents her from performing *any* work at even the lowest exertional level.[7]

As the ALJ correctly found, the medical record contains no objective medical evidence to confirm Plaintiff's complaints that the pain she experiences is constant, totally limiting, and at the highest levels of intensity, nor does it indicate that Plaintiff's conditions are of such a severity that they reasonably can be expected to give rise to such pain.[8] Plaintiff's medical records consistently

---

[7] Although shortly after Plaintiff stopped working as a caregiver, one physician noted that Plaintiff was "unable to work *currently* secondary to a large incisional hernia and back pain *that prevents her from doing her normal job* [in a nursing home picking up patients]," (R. 249)(emphasis added), no medical source has opined that Plaintiff is unable to perform sedentary work. A medical opinion that Plaintiff is unable to return to her position as a caregiver, which requires medium exertion, is entirely consistent with the ALJ's ruling in this case.

[8] Plaintiff's treatment history is a factor for the ALJ to consider in assessing credibility. *See* 20 C.F.R. § 4041529(c)(3); SSR 97- 7p, 61 Fed. Reg. at 34486, 34487.

indicate that, upon examination, Plaintiff presented in no apparent or acute distress. (R. 236, 238, 241, 242, 244,246, 249, 250, 252). As the ALJ noted, it is more than a bit "odd" that, despite complaints of constant, severe pain, Plaintiff never sought relief from any pain medication. (R. 21, 274-75). Moreover, no medical source has opined that Plaintiff exhibited disabling symptoms or was otherwise disabled within the meaning of the Act. To the contrary, consultative examiner Dr. Thuss recognized Plaintiff's morbid obesity and other impairments, (R. 179), yet still found that Plaintiff was able to function at a level consistent with sedentary work. (R. 184).[9]

Plaintiff points to Ruling 02-1p as "evidence" that her impairments are disabling simply *because* they are related to her obesity. (Doc. # 8, at 7).[10] But that is not what Ruling 02-1p provides. Although it is very likely that, given the nature of Plaintiff's impairments, her extreme obesity contributed to the genesis and severity of most, if not all, of those conditions, that does not

---

[9] Upon examination, Dr. Thuss found that Plaintiff's lungs were clear with no wheezing, rales, or rhonchi. (R. 180). Extremities revealed 5/5 power, no neuro-vascular deficits, and no clubbing, cyanosis, or edema. (R. 180). Plaintiff could stoop, kneel, and crouch "slow but intact," and had complete balance. (R. 181). Plaintiff had negative straight leg raising, xrays showed normal lumbar curve, well-maintained disc spaces, no focal sclerotic changes, mildly reduced joint symmetry in the medial aspect of the knee, no acute fracture or dislocation, and minimal osteodegenerative changes. (R. 180-83). Dr. Thuss therefore concluded that Plaintiff could sit "ok," was limited in standing and walking, should not lift or carry over 25 pounds, and was limited in travel. (R. 184).

[10] Plaintiff's brief notes:

> Plaintiff reported knee, back and leg pain that the medical records noted as being related to her obesity. (R. 180-181, 209). In addition she suffers from polycystic ovarian syndrome which been linked with obesity as either a cause or exacerbating factor. (R. 80-82). Plaintiff has reported and the medical records support chronic pain associated with this condition. Plaintiff has also been diagnosed with chronic GERD connected with atypical chest pain and documented by EGD exhibiting abnormal findings with Plaintiff's esophageal sphincter. (R. 242).

(Doc. # 8, at 7).

mean her impairments must be presumed to be so severe that they automatically render her "disabled" under the Act.  Regardless of whether or not Plaintiff is extremely obese, and whether or not that obesity exacerbated her impairments, the pain standard makes clear that the medical record must still demonstrate either the severity of her pain or the severity of her impairments such that pain at the level she alleges is presumed.  *See* 20 C.F.R. § 404.1529; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Holt*, 921 F.2d at 1223; *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). In this case, the medical evidence starkly contrasts Plaintiff's subjective complaints of extreme pain. There is simply no medical evidence in *this* record to indicate that Plaintiff's obesity compounded her impairments to the point of "disability" as defined by the Act.

The ALJ not only applied proper legal standards when discrediting Plaintiff's subjective complaints, but his decision is supported by substantial evidence.     As the medical evidence outlined above demonstrates, the ALJ's decision to discredit Plaintiff's subjective complaints to the extent they are inconsistent with the performance of sedentary work is well-founded.

## VI.    Conclusion

For all of these reasons, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** this the ___1st___ day of June, 2009.

SENIOR UNITED STATES DISTRICT JUDGE

14